**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**CHRISTY LEE,**

Plaintiff, Case No. 8:26-cv-01113-WFJ-AEP

v.

**AMERIHOME MORTGAGE COMPANY, LLC,**

Defendant.
_______________________________________/

# ORDER

Before the Court is Defendant AmeriHome Mortgage Company, LLC's Motion to Dismiss Plaintiff Christy Lee's Second Amended Complaint for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. 18. Plaintiff, proceeding *pro se*, has responded in opposition, Dkt. 28, and Defendant has replied. Dkt. 32. Upon due consideration, the Court grants Defendant's Motion to Dismiss.

## BACKGROUND[1]

This dispute arises out of the sale of Plaintiff's St. Petersburg house (the "property"). *See generally* Dkt. 6. The property was encumbered by a mortgage loan,

[1] At this stage, all facts alleged by Plaintiff are taken as true, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and the Court therefore recounts the background as it has been detailed in Plaintiff's Second Amended Complaint. *See* Dkt. 6.

which was serviced by Defendant.[2] *Id.* ¶ 6. In March of 2022, the parties executed a loan modification agreement establishing a total monthly payment of $1,113.75. Dkt. 6-1 at 50. Following the modification, the unpaid principal balance was $149,257.08. *Id.*

On April 27, 2022, the Florida Department of Economic Opportunity ("DEO") confirmed receipt of Plaintiff's application for financial assistance from the Florida Homeowner Assistance Fund ("HAF"). Dkt. 6 ¶ 8. On July 13, 2022, Plaintiff's application was approved by the DEO for $3,368.51 in past-due assistance in addition to $1,113.75 per month for the next eighteen months of prospective mortgage payments. *Id.* ¶ 9. The DEO notified Plaintiff of this approval by email, but this communication remained unread for several months. *Id.* ¶ 17. HAF payments were sent accordingly to Defendant for the past-due assistance and for subsequent months of payments. *Id.* ¶¶ 10–12.

Although Plaintiff personally made several mortgage payments throughout 2022, she alleges that she was unaware that the HAF payments were being sent to Defendant. *Id.* ¶¶ 14–16. During this time, Plaintiff reportedly received statements showing various overdue amounts. *Id.* ¶ 15. This, in conjunction with various "backend accounting entries," caused Plaintiff to experience "significant confusion

[2] Defendant is considered a "servicer" under the Real Estate Settlement Procedures Act. *See* 12 C.F.R. 1024.2(b) ("*Servicer* means a person responsible for the servicing of a federally related mortgage loan[.]").

. . . and an inability to understand her actual account." *Id.* ¶ 16. Plaintiff's credit reports from major credit reporting bureaus list that no delinquency was reported by Defendant on this mortgage during the relevant period. *Id.* ¶ 19.

Following a perceived lapse in flood insurance coverage, a force-placed policy was placed upon the property in the amount of $134 per month, effective April 11, 2022. *Id.* ¶ 23. This contributed to an $2,715.67 escrow shortage, which resulted in an increase to Plaintiff's total monthly payment amount to $1,192.19, then to $1,268.58, effective in April 2023. *Id.* ¶¶ 24, 76.

On October 7, 2022, Defendant sent Plaintiff a forbearance acceptance letter, which stated that the monthly mortgage payment was due, but additionally informed Plaintiff of a forbearance period running from October 1, 2022, through December 31, 2022. *Id.* ¶ 20. The letter specifies that the forbearance is related to "a recent natural disaster that has impacted [Plaintiff's] area." Dkt. 6-1 at 75.

On April 14, 2023, Defendant generated a mortgage statement that reflected an overdue amount of $0.00, with a next payment due of $1,268.58. Dkt. 6 ¶ 25; *see* Dkt. 6-1 at 31. This statement also listed a mortgage balance of $148,955.50. Dkt. 6 ¶ 26. On April 25, 2023, Plaintiff sold the property for $295,000, a sizable gain. Dkt. 6-1 at 89. The following day, the mortgage balance was paid in full. Dkt. 6 ¶ 27. Plaintiff reports that she sold the property because she believed that "she was at risk of foreclosure or forced sale[,]" and that she would not have sold the property had

she known the actual status of her mortgage, including that HAF payments were regularly being made. *Id.* ¶ 28. Plaintiff alleges that she only became aware of the HAF mortgage assistance "months after the April 25, 2023 sale of the [p]roperty, when she discovered one unread DEO/HAF email notification in her email account[.]" *Id.* ¶ 17.

Nearly three years later, on April 11, 2026, Plaintiff sent a Notice of Error ("NOE") and Request for Information ("RFI") to Defendant regarding the supposed "HAF-related servicing issues[.]" *Id.* ¶ 30. Defendant responded with an acknowledgment letter dated May 5, 2026. *Id.* ¶ 34.

On April 17, 2026, Plaintiff filed the instant action, Dkt. 1, and subsequently filed an Amended Complaint, Dkt. 4, and the operative Second Amended Complaint. Dkt. 6. Plaintiff brings the following claims in her Second Amended Complaint: Real Estate Settlement Procedures Act ("RESPA") violation regarding failure to timely acknowledge and respond to NOE (Count I); RESPA violation regarding failure to timely acknowledge and respond to RFI (Count II); RESPA violation regarding failure to maintain reasonable servicing policies and procedures and provide accurate borrower information (Count III); Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") violation (Count IV); RESPA violation regarding loss mitigation procedures (Count V); RESPA violation regarding failure to maintain

accurate escrow accounts and disclose escrow shortages (Count VI); and unjust enrichment (Count VII). *Id.* ¶¶ 41–83.

**LEGAL STANDARD**

As an initial matter, *pro se* litigants' filings are liberally construed. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). This liberal reading, however, does not exempt *pro se* litigants from the pleading standards outlined in the Federal Rules of Civil Procedure or the Local Rules of the Middle District of Florida. *Beckwith v. BellSouth Telecomms., Inc.*, 146 F. App'x 368, 371 (11th Cir. 2005). Moreover, a district court may not serve as a *pro se* litigant's "de facto counsel" or "rewrite an otherwise deficient pleading[.]" *See GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998).

Federal Rule of Civil Procedure 8(a)(2) requires a short and plain statement of the claim showing that the plaintiff is entitled to relief to give the defendant fair notice of the claims and grounds. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The plaintiff is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted).

In considering a Rule 12(b)(6) motion to dismiss, the court must construe the facts in the light most favorable to the plaintiff. *Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 485 (11th Cir. 2015). Courts consider the allegations of the complaint,

documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322–23 (2007). A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (citation modified). However, "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004) (citation omitted).

## DISCUSSION

### I. Counts I & II – RESPA Violations Regarding Failure to Timely Acknowledge and Respond to NOE & RFI

Plaintiff argues in Counts I and II that Defendant is liable under RESPA because it violated 12 C.F.R. §§ 1024.35(d)(l), (e) and 1024.36(c), (d) of Regulation X by failing to timely acknowledge and respond to the joint NOE/RFI sent by Plaintiff on April 11, 2026. Dkt. 6 ¶¶ 44, 45, 50, 51. However, for NOEs, RESPA provides that "[a] servicer is not required to comply with the requirements of paragraphs (d) and (e), and (i)" if the asserted error is raised in a notice "delivered to the servicer more than one year after" the "mortgage loan is discharged." 12 C.F.R. § 1024.35(g)(1)(iii)(B). For RFIs, RESPA contains a parallel limitation, providing that a servicer need not comply with the requirements of paragraphs (c)

and (d) if the request "is delivered to a servicer more than one year after" the "mortgage loan is discharged." 12 C.F.R. § 1024.36(f)(1)(v)(B).

Here, Plaintiff sent the joint NOE/RFI nearly three years after the mortgage balance was paid in full in 2023. *See* Dkt. 6 ¶¶ 27, 30. Defendant argues that Plaintiff's delay of greater than one year exempts it from any obligation to acknowledge or respond. Dkt. 18 at 6–8. Plaintiff responds that Sections 1024.35(g)(2) and 1024.36(f)(2) separately require that, "[i]f a servicer determines that . . . [it] is not required to comply with the [acknowledgment and response] requirements . . . , the servicer shall notify the borrower of its determination in writing not later than five days . . . after making such determination. The notice to the borrower shall set forth the basis . . . upon which the servicer has made such determination." *See* Dkt. 28 at 2, 4. However, Counts I and II allege liability under Sections 1024.35(d)(l), (e) and 1024.36(c), (d), and *not* Sections 1024.35(g)(2) and 1024.36(f)(2). *See* Dkt. 6 ¶¶ 44, 45, 50, 51. Plaintiff may not amend the statutory basis for her claims via a response to the Motion to Dismiss. *See Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006) ("[T]he subsequent assertion of an additional, separate statutory basis . . . effects a fundamental change in the nature of [Plaintiff's] . . . claim."); *Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 665 (11th Cir. 2015) ("We repeatedly have held

that plaintiffs cannot amend their complaint through a response to a motion to dismiss." (citing *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009))).

Even if Counts I and II were properly asserted under these newly raised subsections, Plaintiff never alleges that Defendant yet made this determination, which would then require notification. *See* Dkt. 6. The last correspondence that Plaintiff received was Defendant's response dated May 5, 2026, which stated that Defendant would "promptly review and thoroughly research" the inquiry, and guaranteed a subsequent response. *Id.* ¶ 34. Because Plaintiff fails to affirmatively allege that Defendant yet made the requisite determination to trigger the obligation to send a notification of such determination, Plaintiff therefore fails to sufficiently state a claim under Sections 1024.35(g)(2) and 1024.36(f)(2).

Nonetheless, a servicer's obligation to acknowledge and respond to NOEs/RFIs is only triggered when the servicer receives the NOE/RFI at the address designated by the servicer for receipt of such notices. *See Bivens v. Bank of Am., N.A.*, 868 F.3d 915, 919 (11th Cir. 2017) ("If a servicer designates a particular address for receiving [NOEs/RFIs], Regulation X requires a borrower to mail a [NOE/RFI] to that address to trigger the servicer's duty to respond."). Plaintiff concedes that she mailed the joint NOE/RFI to Defendant's corporate headquarters, rather than to the designated address listed in Defendant's correspondence. Dkt. 6 ¶¶ 31, 43. However, Plaintiff points to commentary on Sections 1024.35(c) and

1024.36(b) to contend that servicers must comply with relevant requirements for NOEs/RFIs "received at *any* address." *Id.* ¶¶ 31, 49 (emphasis added) (citing 12 C.F.R. § 1024.35, Supplement I, Comment 3(i)). Although the Court could not locate "Comment 3(i)," it appears that Comment 1 regarding Sections 1024.35(c) and 1024.36(b) notes that "[i]f a servicer does not designate a specific address that a borrower must use to [assert an error or request information], a servicer must respond to a [NOE/RFI] received by any office of the servicer."

The present circumstances are clearly distinguishable, as Plaintiff admits that Defendant did in fact designate a specific address to receive NOEs/RFIs and communicated this designation in its correspondence. Dkt. 6 ¶¶ 31, 43, 49. The Court therefore finds that Defendant's relevant obligations under Sections 1024.35 and 1024.36 were never triggered due to Plaintiff's admitted failure to send the joint NOE/RFI to Defendant's designated address. Accordingly, the Court finds that the present Motion to Dismiss is due to be granted as to Counts I and II.

## II. Count III – RESPA Violation Regarding Failure to Maintain Reasonable Servicing Policies and Procedures and Provide Accurate Borrower Information

Plaintiff argues in Count III that Defendant is liable under RESPA because it violated 12 C.F.R. §§ 1024.38 and 1024.39. Dkt. 6 ¶¶ 55, 57. Section 1024.38 requires servicers to "maintain policies and procedures that are reasonably designed to achieve [certain enumerated] objectives[,]" 12 C.F.R. § 1024.38(a), and Section

1024.39 requires servicers to "establish or make good faith efforts to establish live contact with a delinquent borrower . . . [and] inform the borrower about the availability of loss mitigation options, if appropriate." 12 C.F.R. § 1024.39(a).

Defendant contends that this claim fails because "neither regulation creates a private right of action available to or enforceable by individual borrowers." Dkt. 18 at 11. Although the Eleventh Circuit has not affirmatively made this determination, district courts in this circuit have held such about Section 1024.38, *Paz v. Seterus, Inc.*, No. 14-62513-CIV, 2016 WL 3948053, at *5 (S.D. Fla. Apr. 28, 2016) ("Borrowers have no private right of action under § 1024.38." (citations omitted)); *Wing Kei Ho v. Bank of Am., N.A.*, No. 16-80538-CIV, 2016 WL 8679254, at *2 (S.D. Fla. June 21, 2016) ("[S]everal of the statutes listed in the Complaint[—including § 1024.38—]do not provide a private right action. This means that Plaintiff cannot bring a claim pursuant to these statutes and regulations." (citations omitted)), and the Eleventh Circuit has held such about Section 1024.39 in an unpublished opinion. *Cilien v. U.S. Bank Nat'l Ass'n*, 687 F. App'x 789, 792 n.2 (11th Cir. 2017) ("We also note that—unlike 12 C.F.R. § 1024.41—the regulations set forth in sections 1024.39 and 1024.40 provide no private cause of action." (citations omitted)).

The Court holds the same and finds that Sections 1024.38 and 1024.39 do not create a private right of action available to or enforceable by individual borrowers,

such as Plaintiff. Accordingly, the Court finds that the present Motion to Dismiss is due to be granted as to Count III.

**III. Count IV – FDUTPA Violation**

Plaintiff argues that Defendant is liable under FDUTPA due to alleged deceptive trade practices. Dkt. 6 ¶¶ 60–65. This claim is premised upon allegations that: monthly mortgage statements incorrectly presented overdue amounts while Defendant received HAF payments; communications were sent that omitted reference to HAF payments; and Defendant reported no delinquency to major credit reporting bureaus while informing Plaintiff that she faced delinquency. *Id.* ¶ 62. FDUTPA provides for a civil cause of action for "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). "A consumer claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. 4th DCA 2008) (citation omitted).

Notwithstanding the first and last elements, the Court finds that the matter of causation is dispositive. "FDUTPA's causation element requires a plaintiff to allege that the deceptive act or unfair practice was likely to cause injury to a reasonably relying consumer and that the type of harm he suffered was reasonably foreseeable to result from the defendant's deceptive act or unfair practice." *Dawson v. Generac*

*Power Sys., Inc.*, 820 F. Supp. 3d 1306, 1335 (M.D. Fla. 2025) (citation modified). Causation is thus determined according to an objective standard, *see id.*, and actual reliance on the alleged deceptive act or unfair practice is not required to be alleged. *Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279, 1283 (11th Cir. 2011).

Here, although Plaintiff asserts that she sold the property because she believed she was under an improperly induced belief that her mortgage payments were delinquent, Dkt. 6 ¶ 63 (claiming that Defendant's conduct "caused Plaintiff to lose her home, and resulted in years of housing instability, financial harm, and severe emotional distress"), she acknowledges that the April 14, 2023, mortgage statement reflected no overdue amount and that her credit reports did not reflect a mortgage delinquency. *Id.* ¶¶ 19, 25. Moreover, Plaintiff alleges that she merely remained unaware of the HAF payments because she did not read the DEO email informing her of the approval of financial assistance until months after the sale. *Id.* ¶ 17 ("Plaintiff did not learn that HAF had approved and sent mortgage assistance on her behalf until months after the April 25, 2023 sale of the Property, when she discovered one unread DEO/HAF email notification in her email account confirming her HAF approval").

The Court finds that Plaintiff's allegations fail to establish a sufficient causal connection between Defendant's purportedly deceptive or unfair conduct and her decision to sell the property. In particular, the allegations do not explain how

Defendant's conduct would have reasonably led a similarly situated consumer to believe that foreclosure was imminent when the most recent mortgage statement reflected no overdue balance, and no delinquency appeared on Plaintiff's credit reports. *See id.* ¶¶ 19, 25. Nor does Plaintiff allege facts plausibly alleged that Defendant's omission of information regarding the HAF payments, as opposed to her failure to review the DEO email, was the reason she remained unaware of the assistance. *See id.* ¶ 17. Plaintiff therefore has not demonstrated that her decision to sell the property for a large gain was a reasonably foreseeable consequence of Defendant's alleged conduct, and Plaintiff thus fails to sufficiently plead the causation element of her FDUTPA claim. *See Barton*, 988 So. 2d at 86. Accordingly, the Court finds that the present Motion to Dismiss is due to be granted as to Count IV.

**IV. Count V – RESPA Violation Regarding Loss Mitigation Procedures**

Plaintiff argues in Count V that Defendant is liable under RESPA because it violated 12 C.F.R. §§ 1024.39 and 1024.41. Dkt. 6 ¶ 68. As an initial matter, the Court has already determined that Section 1024.39 does not provide Plaintiff a private right of action. *See Cilien*, 687 F. App'x at 792 n.2. Section 1024.41 establishes certain procedural requirements that apply to servicers "[u]pon receipt of a loss mitigation application." 12 C.F.R. § 1024.41(b)(1). These requirements apply

to both complete and incomplete loss mitigation applications. *See* 12 C.F.R. 1024.41(c)(1), (2).

Defendant contends that this claim fails because "Plaintiff never submitted a loss mitigation application[.]" Dkt. 18 at 13. A loss mitigation application is defined as "an oral or written request for a loss mitigation option that is accompanied by any information required by a servicer for evaluation for a loss mitigation option." 12 C.F.R. § 1024.31. Within the Second Amended Complaint, Plaintiff never asserts that she submitted such application to Defendant. *See* Dkt. 6. Plaintiff merely quotes the October 7, 2022, forbearance acceptance letter's reference to the forbearance being offered based on information provided verbally or from an evaluation of "an incomplete loss mitigation application." *Id.* ¶ 68 (quoting Dkt. 6-1 at 75). In her response, Plaintiff argues that this quote—by itself—should fulfil the application requirement for the sake of pleading. Dkt. 28 at 7–9. Noticeably, Plaintiff makes this argument without affirmatively asserting that she actually submitted an application. *See id.*

However, without more, the Court finds this argument to be insufficient. The Second Amended Complaint does not identify when or how Plaintiff purportedly submitted an application, or what information she provided to Defendant in connection with such application. Nor does Plaintiff allege any facts suggesting that Defendant received an application. Although the October 7, 2022, forbearance

acceptance letter references an incomplete loss mitigation application as one possible basis for the forbearance offer, its conditional phrasing does not independently establish that Plaintiff actually submitted an application. Plaintiff's reliance on this language in her response, without any specific factual allegations, fails to amount to a well-pleaded factual assertion. *See Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324–25 (11th Cir. 2012) ("The complaint must contain enough facts to make a claim for relief plausible on its face; a party must plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" (quoting *Iqbal*, 556 U.S. at 678)). The Court thus finds that Plaintiff failed to sufficiently allege that she submitted a loss mitigation application, which is necessary to trigger the procedural requirements of Section 1024.41.

The Court therefore need not address whether Defendant otherwise complied with the requirements of Section 1024.41, as Plaintiff's failure to allege that she submitted the requisite application is fatal to her claim. Accordingly, the Court finds that the present Motion to Dismiss is due to be granted as to Count V.

### V. Count VI – RESPA Violation Regarding Failure to Maintain Accurate Escrow Accounts and Disclose Escrow Shortages

Plaintiff argues in Count VI that Defendant is liable under RESPA because it violated 12 C.F.R. §§ 1024.17(f), (k) and 1024.37. Dkt. 6 ¶ 68. Sections 1024.17 and 1024.37 provide certain analysis and notification requirements for servicers regarding a borrower's escrow account. 12 C.F.R. §§ 1024.17(f), (k), 1024.37. This

RESPA claim is premised upon allegations of: improper force-placement of flood insurance, which created an escrow shortage; failure to notify DOE of increased monthly payment requirements; and failure to provide accurate and complete escrow accounting. *See* Dkt. 6 ¶ 76.

Defendant raises that such claims are "barred by the three-year statute of limitations applicable to RESPA claims." Dkt. 18 at 15. Indeed, RESPA provides that "[a]ny action pursuant to the provisions of section 2605 . . . may be brought . . . within 3 years . . . from the date of the occurrence of the violation." 12 U.S.C. § 2614. This three-year limitations period applies to claims arising under Sections 1024.17 and 1024.37. *See Sapp v. Nationstar Mortg. LLC*, 794 F. App'x 875, 878 (11th Cir. 2019) (affirming that a RESPA claim must be brought within three years from the occurrence of the violation). With the most recent possible alleged violation occurring February 21, 2023, Dkt. 6-1 at 81–84, Plaintiff appears to concede that this claim was brought outside the limitations period. Dkt. 28 at 9–10. Instead, Plaintiff contends that the statute of limitations here should be equitably tolled "for fraudulent concealment[.]" *Id.*

The Eleventh Circuit, in an unpublished opinion, has noted that although there "appears to be a circuit split regarding whether equitable tolling applies to RESPA claims[,] . . . "[t]his circuit has not addressed the issue directly[.]" *McCarley v. KPMG Int'l*, 293 F. App'x 719, 723 n.6 (11th Cir. 2008) (collecting cases).

Assuming that equitable tolling is available for the sake of this analysis, it is only appropriate when "a litigant untimely files due to extraordinary circumstances that are beyond [her] control and unavoidable even with due diligence." *Makozy v. Westcor Land Title*, 852 F. App'x 518, 519 (11th Cir. 2021) (quoting *Stamper v. Duval Cnty. Sch. Bd.*, 863 F.3d 1336, 1342 (11th Cir. 2017)). Further, it is an "extraordinary remedy which should be extended only sparingly." *Justice v. United States*, 6 F.3d 1474, 1479 (11th Cir. 1993).

Plaintiff argues in her response that equitable tolling should apply because Defendant "continu[ed] to present a delinquency and foreclosure-risk picture that was inconsistent with the actual account status." Dkt. 28 at 9–10 (quoting Dkt. 6 ¶ 18). However, Plaintiff's own allegations establish that she was aware of the force-placed insurance, resulting escrow shortage, and increased monthly payment obligations through the mortgage statements and other communications from Defendant. *See* Dkt. 6 ¶¶ 23–25, 76; *see also* Dkt. 6-1 at 81–84 (escrow analysis dated February 21, 2023). There are no allegations that Plaintiff made any efforts during the limitations period to investigate the purported escrow discrepancies; rather, her allegations suggest that she ought to have been aware of the alleged violations giving rise to this claim but did not pursue them until after the limitations period had expired.

In light of this, the Court finds that Plaintiff has failed to demonstrate "extraordinary circumstances" beyond her control and has failed to allege that she rendered "due diligence." *See Makozy*, 852 F. App'x at 519. Equitable tolling is therefore not available for this untimely claim. Accordingly, the Court finds that the present Motion to Dismiss is due to be granted as to Count VI.

**VI. Count VII – Unjust Enrichment**

Plaintiff asserts that Defendant's liability as to unjust enrichment is premised upon allegations that: Defendant retained HAF payments while not informing Plaintiff; Defendant collected an improper payoff amount; and Defendant collected force-placed insurance premiums it was not entitled to collect. Dkt. 6 ¶ 81. Notwithstanding the elements, claims of unjust enrichment are precluded under Florida law by the existence of an express contract between parties concerning the same subject matter. *See Braham v. Branch Banking & Tr. Co.*, 170 So. 3d 844, 848 (Fla. 5th DCA 2015); *Mony Life Ins. Co. v. Perez*, 146 F.4th 1018, 1026 (11th Cir. 2025) ("Florida courts have held that a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter." (citation omitted)). In her response, Plaintiff cites to case law that holds that dismissal of an unjust enrichment claim is "premature" when the existence an express contract is in dispute. Dkt. 28 at 11.

However, the existence of the underlying note and mortgage relevant to this action is not in dispute. *See* Dkt. 28 ("The Note and Mortgage address the borrower-lender payment relationship, the terms of repayment, and the servicer's authority to force-place insurance under specified conditions."). The allegations that Plaintiff has premised this claim upon relate to the reporting of mortgage payments, the receipt of the mortgage payoff amount, and the collection of mortgage-related insurance premiums. *See* Dkt. 6 ¶ 81. The Court finds that each of these allegations are intimately related to the subject matter of the note and mortgage, which precludes Plaintiff's claim of unjust enrichment. *See Perez*, 146 F.4th at 1026–27; *Waites v. Wilmington Sav. Fund Soc'y*, No. 8:25-cv-2293-SPF, 2026 U.S. Dist. LEXIS 158920, at *31 (M.D. Fla. July 16, 2026) ("Here, the parties do not dispute the existence of the Note and Mortgage, and Plaintiff does not plausibly allege that either is invalid; an unjust enrichment claim is unavailable under these circumstances."). The Court finds that this claim would be more properly raised as a breach of contract claim, and not unjust enrichment. Accordingly, the Court finds that the present Motion to Dismiss is due to be granted as to Count VII.

## VII. Dismissal With Prejudice

Before dismissing a *pro se* litigant's complaint, a district court must explain the deficiencies in the pro se party's complaint and generally provide them with at least one opportunity to amend their complaint. *Woldeab v. DeKalb Cnty. Bd. of*

*Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018). Thereafter, a district court may give the *pro se* litigant additional opportunities to replead as justice requires. *Silberman v. Mia. Dade Transit*, 927 F.3d 1123, 1132–33 (11th Cir. 2019); Fed. R. Civ. P. 15(a)(2). However, a district court may "dismiss a *pro se* complaint with prejudice where any amendment would be futile—that is, where even 'a more carefully drafted complaint could not state a claim.'" *Alberto v. Sec'y, Fla. Dep't of Corr.*, 770 F. App'x 467, 469 (11th Cir. 2019) (quoting *Woldeab*, 885 F.3d at 1291).

The Court finds that any amendment in the present action would be futile. Plaintiff has filed three complaints here, Dkts. 1, 4, 6, and the deficiencies identified in this Order are not merely the result of insufficient factual detail that could be cured through a fourth complaint. Rather, the claims fail for reasons that largely cannot be remedied by amendment, including the expiration of applicable limitations periods, the absence of private rights of action, and the failure to satisfy statutory prerequisites. Moreover, this action is ultimately meritless. Rather than portraying wrongdoing by Defendant, the alleged facts reflect that Plaintiff mistakenly sold her house after misinterpreting a mortgage statement, Dkt. 6 ¶ 25, and failing to notice an important email from the DEO. *Id.* ¶ 17; *see Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir. 2001) ("A claim is frivolous if it is without arguable merit either in law or fact."); *see also Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993) ("A case is frivolous . . . when it appears the plaintiff has little or no chance of success." (citation

modified)). Accordingly, the Court finds that further leave to amend is unwarranted and that dismissal with prejudice is appropriate.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

(1) Defendant AmeriHome Mortgage Company, LLC's Motion to Dismiss, Dkt. 18, is **GRANTED**. Plaintiff Christy Lee's Second Amended Complaint, Dkt. 6, is **DISMISSED with prejudice**.

(2) The Clerk is directed to **TERMINATE** all pending motions and deadlines and **CLOSE** this case.

**DONE AND ORDERED** in Tampa, Florida, on November 24, 2026.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
*Pro se* Party
Counsel of Record